Donald STEWART and Betty Stewart, Plaintiffs-Appellees,

v.

MOROSA BROTHERS TRANSPORTATION COMPANY et al., Defendants, Appellees,

and

Harbor Insurance Company, Defendant-Appellant.

Donald R. STEWART and Betty Stewart, Plaintiffs-Appellees,

v.

MOROSA BROTHERS TRANSPORTATION COMPANY et al., Defendants, Appellees,

and

Navajo Freight Lines, Inc., Defendant-Appellant.

Nos. 77-3126, 77-3512.

United States Court of Appeals, Ninth Circuit.

Jan. 15, 1980.

Robert H. Remaud, Phoenix, Ariz., argued for Navajo Freight Lines.

Philip A. Robbins, Thomas A. McGuire, O'Connor, Cavanaugh, Anderson, Westover, Killingsworth & Beshears, Phoenix, Ariz., argued for Harbor Ins. Co.; Robbins, Green, O'Grady & Abduhl, James M. Videan, Phoenix, Ariz., on brief.

Robert G. Begam, Langerman, Begam, Lewis, Leonard & Marks, Phoenix, Ariz., argued for the Stewarts.

Before MERRILL and KENNEDY, Circuit Judges, and WILLIAMS,* District Judge.

MERRILL, Circuit Judge:

Appellee Stewart suffered injuries allegedly through the negligence of appellee Thompson, a driver-employee of appellant Navajo Freight Lines, Inc. Stewart has brought this action against Navajo and Harbor Insurance Co., contending that under Arizona law they are insurers of Thompson. Jurisdiction is founded on diversity of citizenship.

Plaintiff Stewart was also a driver-employee of Navajo. He and Thompson operated as a team. On March 8, 1973, while their truck was being operated by Thompson in Arizona, it was involved in a collision with another truck which resulted in serious injuries to Stewart. Stewart recovered workmen's compensation, which, under Arizona law, fully discharged all liability of Navajo as employer of Thompson for Thompson's or Navajo's negligence in connection with the accident. Stewart then brought this action against the owners and operators of the other truck. Later, his complaint was amended to state a claim against Thompson, and against Navajo and Harbor as Thompson's insurers. Cross motions for summary judgment upon that claim were filed by Thompson and by appellants, and summary judgment against appellants was granted. This appeal was then taken.

The district court, in agreeing with plaintiff Stewart that Navajo and Harbor were Thompson's insurers, found what we may call insurance by implication. Its holding is discussed and rejected later in this opinion. On this appeal appellees purport to find a statutory basis for appellants' liability, which we discuss first.

When a motor vehicle accident has resulted in bodily injury or death or $300 in property damage, Arizona's uniform motor vehicle safety responsibility act, A.R.S. § 28–1101 *et seq.,* requires that unless se-

---

* Honorable David W. Williams, United States District Judge of the Central District of California, sitting by designation.

curity for satisfaction of judgments is deposited the assistant director for the Motor Vehicle Division of the Department of Transportation (referred to throughout the act as the "superintendent") shall suspend the license of each operator and the registration of each motor vehicle involved, or, if the operator is a nonresident, the privilege of operating a motor vehicle in Arizona. § 28–1142 A. Subsection B 1 of that section exempts the owner or operator from this provision "if the owner had in effect at the time of the accident an automobile liability policy with respect to the motor vehicle involved in the accident." The requisites of that policy are spelled out in § 28–1170.[1] Section 28–1142 B 4 exempts "any person qualifying as a self-insurer under § 28–1222."[2]

■ Since, under Arizona's workmen's compensation law, Navajo is not directly liable to Stewart for Thompson's negligence on principles of *respondeat superior,* Stewart can only prevail on the theory that Navajo has complied with the provisions of § 28–1142 B 4 and thus has, *as insurer,* assumed financial responsibility for the negligence of Thompson, its permissive user.

Stewart's complaint alleges that Navajo has filed with the Arizona Corporation Commission a liability insurance policy with Harbor as insurer, which policy covers the operation of Navajo's motor vehicles in the State of Arizona. The limit of the policy is alleged to be $6,000,000, with $100,000 deductible. The complaint alleges that Navajo has qualified as self-insurer to the sum of $100,000.

These acts on Navajo's part are not, however, in compliance with the motor vehicle safety responsibility act but with Title 40 of A.R.S. which deals with public utilities and carriers and establishes the state corporation commission. Chapter 3 of that title deals with motor carriers. Section 40–608 provides for the issuance by the commission of permits for carriers to operate within the state. Section 40–611 A requires as a condition to the issuance of a permit that the applying carrier file with the commission a liability insurance policy for an amount to be fixed by the commission. It states:

"The liability insurance shall bind the insured to pay compensation for injuries to persons and for loss or damage to property *resulting from the negligent operation of the carrier."* (Emphasis added).

Section 40–611 B provides:

"Any such carrier may in lieu of filing a policy of insurance, file with the commission satisfactory proof of ability to respond in damages in the amount of fifteen thousand dollars, when but one motor vehicle is used or operated by the carrier, and ten thousand dollars additional for each motor vehicle in excess of one, but proof of ability to respond in damages in the amount of one hundred thousand dollars shall be sufficient for any number of motor vehicles."

---

1. Section 28–1170 B reads in part as follows:

  "B. The owner's policy of liability insurance must comply with the following requirements:

  *     *     *     *     *     *

  2. It shall insure the person named therein and *any other person, as insured, using the motor vehicle or motor vehicles with the express or implied permission of the named insured,* against loss from the liability imposed by law for damages arising out of the ownership, maintenance or use of the motor vehicle or motor vehicles within the United States or the Dominion of Canada, subject to limits exclusive of interest and costs, with respect to each motor vehicle as follows:

  (a) Fifteen thousand dollars because of bodily injury to or death of one person in any one accident." (Emphasis added).

2. Section 28–1222 provides in part:

  "A. A person in whose name more than twenty-five motor vehicles are registered may qualify as a self-insurer by obtaining a certificate of self-insurance issued by the superintendent [assistant director for the Motor Vehicle Division of the Department of Transportation] as provided in subsection B of this section.

  B. The superintendent may, in his discretion, upon the application of the person, issue a certificate of self-insurance when he is satisfied that the person is possessed and will continue to be possessed of ability to pay judgments obtained against him."

It is in response to this section that Navajo has filed with the commission the policy of insurance referred to in Stewart's complaint and a bond in the sum of $100,000.[3]

Since liability under § 28–1170 B 2(a) is limited to $15,000, any liability under that section is outside the limits of Harbor's policy, and judgment against Harbor must be reversed.

As to Navajo, it apparently has satisfied the corporation commission that it is financially responsible for the consequences of its own negligent operations and has accordingly obtained its permit to operate as a carrier; but it appears never to have complied with § 28–1142 B 1. It has never sought or been issued a certificate of self-insurance by the superintendent; nor has it ever had in effect any policy of insurance complying with the requirements of that section respecting permissive users, at least as to the first $100,000 of liability. Thus it has never assumed financial responsibility for negligence other than its own.

■■■ Navajo thus is subject to whatever consequences may be imposed by Arizona law for failure to meet the conditions of § 28–1142 B 1 or B 4. However, as we construe Arizona statute law, it cannot be held liable to Stewart as Thompson's insurer.

As we have noted, the district court, by a different route, found Navajo and Harbor to be insurers of Thompson. It stated that in the past when suit had been brought against Navajo and one of its employees for the latter's acts of negligence, it had been Navajo's practice to defend such actions at its own expense and to satisfy judgment rendered in them. From this the court reasoned that Navajo as self-insurer had undertaken to act as insurer for its employees. It likened Navajo's self-imposed position as self-insurer to an insurance policy by which it "chose to extend coverage to its drivers as well as itself * * * and in the absence of a specific exclusion, those drivers must be considered to be covered under both [the Navajo and Harbor] poli-

cies." From this reasoning it concluded that Navajo and Harbor were liable to Thompson up to the limits of their "policies," respectively $100,000 and $6,000,000.

■■■ We cannot agree with this reasoning. An insurance policy is a contract between insurer and insured. No such contract existed in this case. *Cf. Mountain States Tel. & Tel. Co. v. Aetna Casualty and Surety Co.,* 116 Ariz.App. 225, 568 P.2d 1123 (1977). Further, Navajo's and Harbor's practice of defending suits in which Navajo's employees were charged with negligence was limited, so far as the record shows, to cases where Navajo and its driver were sued jointly. Here the injured party was an employee of Navajo and, as we have noted, the workmen's compensation law of Arizona frees Navajo from any *respondeat superior* liability other than that imposed by the workmen's compensation law. Thus, even if Navajo's practice of defending drivers sued jointly with it could somehow be construed to constitute a "policy of insurance," that policy would not extend to the facts of this case.

Judgment reversed.

---

**3.** The bond simply assures that "the Principal shall pay or cause to be paid every final judgment recovered against the Principal * * * resulting from the ownership, operation, maintenance, or use of motor vehicles under the permit issued * * *."